Ray J. MINCONE, Barbara A. Gheta, George Ehman, Victoria Guadagna, and Hugh McElhon, Plaintiffs,

v.

NASSAU COUNTY COMMUNITY COLLEGE; Dr. Sean Fanelli, in his capacity as President of Nassau County Community College; Board of Trustees of Nassau County Community College; Rosalyn Udow in her capacity as Chairman of the Board of Trustees of Nassau County Community College, Dr. Joseph Dondero and Professor Valeri Pinhas, in their capacities as employees of Nassau County Community College, Defendants.

No. CV 95–1879.

United States District Court, E.D. New York.

April 27, 1996.

400

American Catholic Lawyers Assoc., Clifton, NJ, by Christopher A. Ferrara, and Migliore & Infranco, P.C., Commack, NY, by Joseph P. Infranco, for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, New York City, by Lawrence S. Block and Gregg M. Mashberg, for defendants.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiffs Ray J. Mincone, Barbara A. Gheta, George Ehman, Victoria Guadagna, and Hugh McElhon (the "plaintiffs") commenced this action on May 5, 1995 and filed an amended complaint on June 15, 1995. The amended complaint, which seeks declaratory and injunctive relief as well as attorneys fees and costs, challenges a course enti-

tled "Family Life and Human Sexuality" ("PED 251"), which is part of the curriculum at the defendant Nassau County Community College ("NCCC"). Specifically, the first cause of action seeks a declaration that PED 251 violates Article 1 § 3 of the New York State Constitution, which requires religious neutrality and protects free exercise of religion. The second cause of action seeks a declaration that PED 251 violates the free exercise of religion and establishment of religion clauses of the First Amendment of the United States Constitution. The fifth cause of action seeks an order enjoining the conduct of PED 251 and dissemination of its course materials as violative of 42 U.S.C. 2000bb (the Religious Freedom Restoration Act). The sixth cause of action seeks an order requiring certain disclosure of the course content under N.Y.Educ. § 607. By stipulation dated October 18, 1995, the plaintiffs discontinued several other causes of action and also removed the Organization of Senior Citizens and Retailers as a party plaintiff.

The plaintiffs moved the Court for an order preliminarily enjoining the defendants from conducting PED 251 or using challenged course materials in any course during the pendency of this action. The defendants, Nassau County Community College; Dr. Sean Fanelli, in his capacity as President of Nassau County Community College; the Board of Trustees of Nassau County Community College; Roslyn Udow in her capacity as Chairman of the Board of Trustees of Nassau County Community College, Dr. Joseph Dondero and Professor Valeri Pinhas, in their capacities as employees of Nassau County Community College (the "defendants"), moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a cause of action upon which relief may be granted. The defendants also sought removal of the plaintiff Ray J. Mincone from this action on the ground that he allegedly lacks standing to bring the claims.

The Court heard oral argument on these motions on December 15, 1995 and rendered a partial decision on the record on that date. On December 15, 1995, the Court granted leave to the parties to further brief the issue of dismissal of the plaintiffs' free exercise causes of action. This written decision is based upon consideration of the papers in support of and in opposition to the motions, the parties' respective positions as stated at oral argument on December 15, 1995, the defendants' letters dated December 19, 1995 and January 11, 1996 and the plaintiffs' letter dated January 4, 1996.

## I. *BACKGROUND*

The individual plaintiffs, except the plaintiff Mincone, are residents and taxpayers of Nassau County. The plaintiff Mincone was enrolled in PED 251 during the summer semester of 1995 as a senior citizen auditor; he enrolled in the course again for the fall 1995 semester. The defendants are Nassau County Community College ("NCCC"), its president, its board of trustees and two faculty members involved in teaching PED 251. The amended complaint identifies NCCC as being "chartered under Education Law Article 126, sponsored by Nassau County and [ ] funded in part by Special County Appropriations." The plaintiffs allege that PED 251 "expresses a philosophy of hostility to certain religious views and promotes other religious views." Specifically, the amended complaint alleges that the course "constitutes a deliberate and malicious disparagement of traditional Jewish and Christian, and particularly Catholic, teachings on marriage, procreation and adultery" and "promotes the religious teachings of particular Eastern religions, such as Hinduism and Buddhism regarding sexuality." The amended complaint alleges that the course violates the "strict religious neutrality" required by the United States and New York Constitutions, and, as such, "burdens and violates the free exercise and enjoyment of religious profession and worship."

## II. *DISCUSSION*

### A. *The defendants' motion to dismiss the complaint*

#### i. *the standard governing a Rule 12(b)(6) motion*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the

complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ". *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir. 1993). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken". *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

█ It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f). It is within this framework that the Court addresses the present motion to dismiss.

### ii. *academic freedom*

█ The defendants argue that the plaintiffs' constitutional claims are barred by NCCC's First Amendment right to academic freedom. The defendants correctly state that academic freedom is a special concern of the first amendment, which extends both to educators and institutions. *See e.g., Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 312, 98 S.Ct. 2733, 2759–60, 57 L.Ed.2d 750 (1978); *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 226, n. 12, 106 S.Ct. 507, 514, n. 12, 88 L.Ed.2d 523 (1985). The principles of academic freedom may provide the defendants with defenses to the plaintiffs' claims. However, they do not bar the plaintiffs from challenging the policies, activities or course material as violative of constitutional guarantees.

Furthermore, the first amendment expression rights of public entities and employees are not absolute. *See e.g., Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Jeffries v. Harleston,* 52 F.3d 9 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995). The Court declines to dismiss the amended complaint based on considerations of academic freedom.

### iii. *standing of the plaintiff Ray Mincone*

The defendants challenge the standing of Ray Mincone to bring this action. As the Second Circuit has stated,

It is a commonplace that jurisdiction of federal courts is limited to cases and controversies. U.S. Const. art III, § 2, cl. 1. Hence, litigants are required to demonstrate a "personal stake" or legally cognizable interest in the outcome" of their case. *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). While the standing doctrine evaluates this personal stake as of the outset of the litigation, the mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, *see Geraghty,* 445 U.S. at 396–97, 100 S.Ct. at 1209; *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir.1991), including the pendency of the appeal. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110

S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). Accordingly, a case that is "live" at the outset may become moot "when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Alexander v. Yale*, 631 F.2d 178, 183 (2d Cir.1980); *see Lewis*, 494 U.S. at 477, 110 S.Ct. at 1253. *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993).

The complaint, which was filed on May 5, 1995 states that Mincone "is" enrolled in PED 251. The papers submitted in connection with this motion state that Mincone enrolled in the course for a second time so that he is a student in PED 251 for the fall 1995 semester. Mincone declares in an affidavit that his purpose in enrolling in PED 251 is "to challenge it under the Constitution because I am deeply concerned about the use of tax dollars to propagandize against the moral tenets of Christianity."

■ The Second Circuit has stated that " 'students' declaratory and injunctive claims against the universities that they attend are mooted by the graduation of the students, because after graduation and absent a claim for damages, 'it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.' " *Fox v. Board of Trustees*, 42 F.3d 135, 140 (2d Cir.1994) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995). No money damages are claimed in this action and it is apparent that Mincone's participation in the course at issue, if not already concluded, would not continue throughout this litigation. Nor does the complaint even suggest that Mincone is suing in a representational capacity on behalf of "similarly situated" individuals. *See Cook, supra*, 992 F.2d at 20 (commenting that "a student's claim may not be rendered moot by graduation if he or she sued in a "representational capacity" as the leader of a student organization" (citations omitted)).

■ Finally, this case does not fall within the exception to the mootness doctrine for situations "capable of repetition, yet evading review." *Id.* at 19 (citing *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911)). In the absence of a class action, that exception is unavailable unless the challenged action is too short in duration to be fully litigated prior to its cessation or expiration *and* there is a reasonable expectation that the same complaining party would be subjected to the same action. *Cook, supra*, 992 F.2d at 19. There is nothing in the complaint to suggest that Mincone is required to repeat the course, which he apparently satisfactorily completed at least once and perhaps twice.

The mootness doctrine ensures that the litigant's interest in the outcome of the case continues to exist throughout the life of the lawsuit, including appeal. *Id.* (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). In student suits such as this one, the declaratory and injunctive relief sought in the amended complaint "could provide no legally cognizable benefit to [the student] Plaintiffs once they had left the [university] system." *Fox, supra*, 42 F.3d at 140. "Further, the condition of mootness is not a defense that could be waived by the Defendants, but rather is a condition that deprives the court of subject matter jurisdiction." *Id.*

■ The plaintiffs state that they intend to file a motion to certify this action as a class action under Fed.R.Civ.P. 23. They urge the Court not to remove Ray Mincone as a plaintiff at this time because he is a potential member of the class. The plaintiffs also contend that Mincone should remain a plaintiff in this action based on his status as a New York State taxpayer. The Court notes that there is no allegation in the amended complaint in its present form that Nassau Community College is funded by state tax dollars. Furthermore, the issue of standing to bring a suit based on a plaintiff's capacity as a state taxpayer involves different considerations than the issue of standing as a municipal taxpayer to challenge municipal action. *See e.g., Board of Educ. v. N.Y. State Teachers Retirement System*, 60 F.3d 106, 110–11 (2d Cir.1995) ("It is well settled that whether a plaintiff has standing in his capacity as a taxpayer turns largely on the sovereign whose act he challenges."). Finally, the

Court declines to address this motion to possible amendments to the complaint that have not yet been sought.

Based on well settled Second Circuit law, the Court finds that the action is moot as to Mincone. Because the Court has no jurisdiction over the claims asserted by Mincone, the defendants' motion to dismiss him as a plaintiff is granted.

#### iv. *establishment of religion claims*

■ The defendants argue that the that the plaintiffs have stated no viable claim regarding the establishment of religion under the First Amendment of the United States Constitution or the New York State Constitution because the challenged course and course materials have no religious content. Specifically, the defendants contend that the establishment of religion claims should be dismissed because the "[p]laintiffs have failed to allege that any part of the *Lemon* test has been violated." The defendants refer to the tests set forth by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) to determine whether governmental action violates the Establishment Clause. These tests inquire whether the challenged action (1) has a legitimate secular purpose; and/or (2) has the primary or principal effect of advancing or inhibiting religion; and/or (3) fosters excessive entanglement of government with religion. *Id.*

■ The plaintiffs respond that there is no authority that states that a plaintiff must allege, with particularity, a *Lemon* test violation to state a cause of action under the Establishment clause. That statement is correct. While *Lemon* provides a framework for evaluating challenged activity or material, the Court notes no authority for the proposition that a complaint must specifically set forth its allegations in terms of *Lemon.* As the Supreme Court stated, "it is well to emphasize, however, that the tests must not be viewed as setting the precise limits to the necessary constitutional inquiry, but serve only as guidelines with which to identify instances in which the objectives of the Establishment Clause have been impaired." *Meek v. Pittenger,* 421 U.S. 349, 358–59, 95 S.Ct. 1753, 1760, 44 L.Ed.2d 217 (1975). At this early stage of the proceedings the Court cannot say that the plaintiffs could prove no facts in support of their allegation that the course and the course material promotes certain religious views and is hostile to others, or that the challenged course has the primary effect of inhibiting or advancing religion. The Court also notes that standing to bring a claim challenging state action under the establishment clause may be based on taxpayer status. *See School Dist. of Abington v. Schempp,* 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963) ("the requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed"); *McGowan v. Maryland,* 366 U.S. 420, 429–430, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) (taxpayers have standing to challenge government action on "establishment" grounds). Accordingly, the Court denies the defendants' motion to dismiss the plaintiffs' claims in the first and second causes of action that seek a declaration that PED 251 violates the constitutional requirement of religious neutrality under the establishment clauses of the First Amendment to the United States Constitution and the New York State Constitution.

#### v. *free exercise claims*

■ The amended complaint also claims that the conduct and materials of PED 251 interferes with their right to free exercise of religion as guaranteed by Article 1 § 3 of the New York Constitution as well as the First Amendment of the United States Constitution and 42 U.S.C. 2000bb, the Religious Freedom Restoration Act ("RFRA").

The defendants challenge the standing of the plaintiffs who remain in the action to assert free exercise of religion claims. The plaintiff Mincone, who was removed as a plaintiff on the ground of mootness, was the only plaintiff enrolled in the challenged course. The remaining plaintiffs are not enrolled in the challenged course, and they do not allege infringement of their personal religious freedom under the First Amendment, the RFRA or the New York State Constitution. Accordingly, the Court finds that re-

maining plaintiffs, whose standing is based solely on their status as Nassau County taxpayers, cannot maintain such claims. *See, e.g., U.S. v. Hays,* —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (it is well settled that the constitutional minimum of standing requires, among other things, that a plaintiff allege that he or she has suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest that is actual or imminent). A free exercise claim is based on allegations of infringement of a plaintiff's own religious freedom. *See e.g., Schempp, supra,* 374 U.S. at 224 n. 9, 83 S.Ct. at 1572 n. 9 (1963) (standing to challenge to state action under the free exercise clause requires proof that particular religious freedoms are infringed); *McGowan, supra,* 366 U.S. at 429, 81 S.Ct. at 1106–07 (no standing to assert free exercise claim in the absence of an allegation of interference with the plaintiffs' own religious freedoms); *Murray v. City of Austin,* 947 F.2d 147, 152 n. 5 (5th Cir.1991) (no standing to assert a free exercise claim in the absence of an allegation of a substantial or significant burden to the plaintiff's exercise of his religion), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *Grove v. Mead Sch. Dist. No. 354,* 753 F.2d 1528, 1531–32 (9th Cir.) (taxpayer status is not sufficient to confer standing to bring free exercise claim), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).

In opposition to dismissal of the free exercise claims, the plaintiffs allege that they intend to move to amend the complaint to add another plaintiff who is enrolled in the challenged course and will allege that the course interferes with his or her free exercise of religion. The plaintiffs also state that they will move to certify the action as a class action under Fed.R.Civ.P. 23. As stated above, the Court declines to consider amendments of the complaint that may be sought in future motions by the plaintiffs. Accordingly, the claims in the first, second and fifth causes of action alleging interference with free exercise of religion in violation of Article 1, § 3 of the New York State Constitution, the First Amendment of the United States Constitution and the RFRA, are dismissed, without prejudice, on the ground that the

plaintiffs do not have standing based on their status as Nassau County taxpayers to assert such claims.

**vi. *New York Education Law § 607***

The plaintiffs sixth cause of action seeks a directive that the defendants comply with N.Y.Educ.Law § 607. This section is part of Article 13 of the Education Law, which is entitled Higher Education Student Financial Aid Programs, provides as follows:

§ 607. Required disclosure to matriculated students.

The commissioner of education shall promulgate rules and regulations to reflect and administer the intent of section 493A of the Higher Education Act of 1965 as last amended by P.L. 94–482 concerning institutional and financial aid for students.

The information, to be disseminated through but not limited to, college catalogues or bulletins, shall include in addition to that information cited by congress, job placement and graduate school placement statistics where available.

All material required by this section and all material contained in the bulletin shall be truthfully representative of the institution.

The plaintiffs challenge the completeness and accuracy of the course description of PED 251 in the NCCC catalogue. However, there is no private right of action expressed in N.Y.Educ.Law § 607. To imply a statutory right of action where none is expressed, the following factors must be satisfied: (1) plaintiffs are members of the class for whose benefit the statute was enacted; (2) there is a basis for implying a statutory or legislative intent to create a remedy; and (3) creation of such a right would be consistent with the legislative scheme. *See e.g., Sheehy v. Big Flats Community Day, Inc.,* 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18 (1989).

Here, the statute plainly states that it covers "disclosure to matriculated students." First, none of the plaintiffs are matriculated students, therefore it cannot be said that the plaintiffs are members of the class for whose benefit the statute was enacted. With re-

gard to the second element, the Court does not perceive any basis for implying an intent to create a remedy under this statute. The statute authorizes the commissioner of education to promulgate regulations to assure compliance with federal laws concerning institutional and financial aid. The regulations require that degree, certificate and diploma programs as well as financial aid information, facilities, faculties and student retention of subject institutions be accurately described. N.Y.C.R.R. tit. 8 §§ 53 & 54. Neither the statute nor the regulations nor the related federal law (20 U.S.C. § 1001 *et seq.,* the Higher Education Act) specifically address the subject of course descriptions. Finally, in the Court's view, it was not the intent of the legislators in enacting N.Y.Educ.Law § 607 to create a private right of action for taxpayers to challenge the accuracy of course descriptions in college catalogues.

Further, negligent misrepresentation in the educational context is not actionable. *See Paladino v. Adelphi Univ.,* 89 A.D.2d 85, 454 N.Y.S.2d 868 (2d Dep't 1982). Therefore the plaintiffs do not state a cause of action for common law nondisclosure upon which relief may be granted.

Accordingly, the Court grants the defendants' motion to dismiss the plaintiffs' sixth cause of action for failure to state a cause of action upon which relief may be granted, pursuant to Rule 12(b)(6).

**B.  *The plaintiffs' preliminary injunction motion***

The plaintiffs cross moved for an order preliminarily enjoining the defendants from presenting PED 251 in its present form and using the complained of course materials in connection with PED 251 or any other course. The plaintiffs did not ask that the course be terminated by the Court prior to the end of the current semester. Rather they seek injunctive relief beginning with next semester.

**i.  *the preliminary injunction standard***

■ In the seminal case of *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979), the Second Circuit set forth the applicable standard in this Circuit for obtaining preliminary injunctive re-

lief. According to *Jackson Dairy,* the movant must clearly establish the following:

> "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" (*Jackson Dairy, supra,* 596 F.2d at p. 72; *see also Alan Skop, Inc. v. Benjamin Moore, Inc.,* 909 F.2d 59, 60 [2d Cir.1990]; *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 [2d Cir.1989] ).

This standard was recently reiterated by the Second Circuit in *Chemical Bank v. Haseotes,* 13 F.3d 569, 573 (2d Cir.1994) and *ICN Pharmaceuticals, Inc. v. Khan,* 2 F.3d 484, 490 (2d Cir.1993).

■ A showing of irreparable harm is perhaps considered the single most important requirement with regard to the granting of a preliminary injunction. *See Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990). Essential to a showing of irreparable harm is the unavailability or at least inadequacy of a money damages award. *See, e.g., Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies"). In addition, the applicant must establish more than a mere "possibility" of irreparable harm, rather, it must show that irreparable harm is "likely" to occur. *See JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990).

■ A preliminary injunction is considered an "extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc., supra,* 917 F.2d at 80; *see also Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986); *Medical Soc'y of State of N.Y. v. Toia,* 560 F.2d 535, 538 (2d Cir.1977).

Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. *See Society for Good Will to Retarded Children, Inc. v. Cuo-*

*mo*, 902 F.2d 1085, 1088 (2d Cir.1990); *Weitzman v. Stein*, 897 F.2d 653 (2d Cir. 1990). The Court will address each of the elements that the plaintiff must establish in order to be entitled to a preliminary injunction and will make the required finding.

### ii. *irreparable harm*

The plaintiffs assert that they will suffer irreparable injury because "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976); *Deeper Life Christian Fellowship v. Board of Educ.*, 852 F.2d 676 (2d Cir.1988). The plaintiffs bring this action based on their status as taxpayers alleging that tax dollars are being improperly expended for an allegedly unconstitutional activity. *See Bd. of Educ. v. N.Y. State Teachers Retirement System*, 60 F.3d 106 (2d Cir.1995). None of the plaintiffs are matriculating students at NCCC. Under these circumstances, it is questionable that the plaintiffs are so directly impacted by the content of PED 251 that they will be irreparably harmed if the course is conducted during the pendency of this lawsuit. However, for purposes of deciding this motion, the Court will assume that the plaintiffs have demonstrated irreparable injury in alleging interference with their First Amendment rights and move on to assess the merits to determine whether the plaintiffs meet the other prerequisites for preliminary relief. *See e.g., Lamb's Chapel v. Center Moriches Union Free School Dist.*, 736 F.Supp. 1247 (E.D.N.Y.1990).

### iii. *likelihood of success on the merits*

■ Although the Court declines to dismiss the complaint in its entirety for failure to state a cause of action, the Court is not prepared to say that the plaintiffs' claims are more likely than not to succeed on their merits. This case presents serious *competing* constitutional considerations. The challenged activity is facially neutral, so that it is not clear at this stage of the proceedings that its object is suppression or coercion or advancement of religious beliefs, *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), or that the defendants are wholly motivated by religious consider-

ations, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). The defendants properly draw the Court's attention to the many cases that have rejected interference with the activities of educational institutions under principles of academic freedom. *See e.g., Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *University of Pa. v. EEOC*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957). The Court is mindful that "[a]cademic freedom is scarcely fostered by the intrusion of three or even nine federal jurists making curriculum or library choices for the community of scholars." *Presidents Council v. Community Sch. Bd.*, 457 F.2d 289, 292 (2d Cir.), *cert. denied*, 409 U.S. 998, 93 S.Ct. 308, 34 L.Ed.2d 260 (1972).

The defendants also note a number of cases in which challenges to academic course materials have not succeeded because the exposure to offensive curricular materials was not found to constitute an impermissible burden on religion. *See e.g., Mozert v. Hawkins County Bd. of Educ.*, 827 F.2d 1058, 1061 (6th Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988); *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).

Based on the limited information available in this case at this stage of the proceedings, the plaintiffs have failed to establish that their interests will more likely than not prevail over the competing interests of the defendants. Accordingly, the Court finds that this prong of the preliminary injunction test is not satisfied by the plaintiffs.

### iv. *litigable issues and the balance of hardships*

■ "In order to utilize the less onerous "serious questions" prong of the above standard, a plaintiff must make the additional showing that the hardships it will suffer if the injunction does not issue far outweigh the hardships which would be visited upon defendants if the injunction is granted." *Congregation Beth Yitzchok v. Town of Ramapo*,

593 F.Supp. 655 (S.D.N.Y.1984). For purposes of this motion, the Court will consider that the plaintiffs have raised serious questions going to the merits to make them fair ground for litigation.

However, the Court finds that the balance of hardships does not tip decidedly in favor of the plaintiffs when weighed against the hardship that could be suffered by students registered for PED 251 for the upcoming semester, who may need to fulfill graduation requirements through completion of the course.

Accordingly, the plaintiffs' motion for a preliminary injunction is denied.

### III. *CONCLUSION*

Based on the foregoing, it is hereby

ORDERED, that the defendants' motion to remove Ray J. Mincone as a party plaintiff in this action is granted; it is further

ORDERED, that the caption of this case shall now read as follows:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------X

CV 95–1879

BARBARA A. GHETA, GEORGE EHMAN, VICTORIA GUADAGNA, and HUGH McELHON,

Plaintiffs,

—against—

NASSAU COUNTY COMMUNITY COLLEGE; DR. SEAN FANELLI, in his capacity as President of Nassau County Community College; BOARD OF TRUSTEES OF NASSAU COUNTY COMMUNITY COLLEGE; ROSALYN UDOW in her capacity as Chairman of the Board of Trustees of Nassau County Community College, DR. JOSEPH DONDERO and PROFESSOR VALERI PINHAS, in their capacities as employees of Nassau County Community College,

Defendants.

--------------------X, it is further

ORDERED, that the defendants' motion, pursuant to Rule 12(b)(6), to dismiss the plaintiffs' claims that are set forth in the first and second causes of action, based on establishment of religion under the New York State Constitution and the First Amendment to the United States Constitution, is denied; it is further

ORDERED, that the defendants' motion, pursuant to Rule 12(b)(6), to dismiss the plaintiffs' claims that are set forth in the first, second and fifth causes of action, based on free exercise of religion under the New York State Constitution, the First Amendment of the United States Constitution and 42 U.S.C. 2000bb, is granted and those claims are dismissed, without prejudice; it is further

ORDERED, that the defendants' motion, pursuant to Rule 12(b)(6) to dismiss the sixth cause of action under N.Y.Educ.Law § 607, is granted and those claims are dismissed, without prejudice; and it is further

ORDERED, that the plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.